is 517-0289 People v. Jacob Austin, parties ready to proceed? Okay. Mr. Bendick? May it please the Court? Good afternoon, Your Honors, Counsel. My name is Chris Bendick from the Office of the State Appellate Defender. I represent the Office of the State Appellate Defender. My plan is to focus on the right to present a defense, the prosecutorial misconduct arguments, but in discussing those, we'll touch upon some of the other issues in the briefs. The jury deliberated Jacob Austin's fate for nearly five hours before sending a note stating that they could not reach a unanimous verdict. After being told to continue to deliberate, they considered Jacob's fate for another five hours before returning a verdict of not guilty on one count and guilty on two others. While they considered Jacob's fate for nearly half a day, what the jury did not know is that they had been prevented from hearing vital evidence explaining the physical condition of M.W.'s body. In this closely balanced case, they had been prevented? Yes. Oh, because of the child. He certainly showed it to them. I'm sorry? He showed his physical condition to the jury. Yes, he did make a demonstration as to his bodily scarring where S.A. Henshaw committed misconduct and commented on I can't see anything during that physical demonstration. The trial court sustained an objection to that. However, the jury did not know about Dr. Swafford's report, which indicated that there was another possible person that could have caused the physical condition to M.W.'s hymen. In this closely balanced case, and absent that evidence being considered by the jury, this court can have no confidence in the jury's verdict, especially where the prosecutors in closing argument repeatedly committed misconduct. Starting with the right to present a defense issue, after the trial court granted a state's pretrial motion prohibiting the defense from inquiring into the sexual history of M.W., a state disclosed a report from Dr. Swafford who examined M.W. ten days after the allegations came to light that M.W. was a virgin. Dr. Swafford confirmed M.W.'s condition would not be consistent with that. As a result of this question and answer, trial counsel asked the court to revisit its prior rape shield ruling and allow the questioning of Dr. Swafford about portions of the report that would have provided an alternative explanation for M.W.'s physical condition other than the alleged contact between Jacob and M.W. So you don't think Dr. Swafford's answer suggested the information that you're seeking? No. In fact, it lends credence to the fact that Jacob and M.W.'s contact was the only possible explanation for that physical condition where in fact we know from her own report that M.W. admitted having consensual intercourse with one other boy for one time, no condom, only been one boy. No, but Dr. Swafford said, was it consistent with this and I think you said that she agreed with the question that it was not consistent with this. Not consistent with her being a virgin. Right. So doesn't that, if you say not consistent with being a virgin, doesn't that imply that she's had some other contact? What was left in front of the jury at that point was that the only physical contact that had been alleged was between Jacob and M.W. The question was not does your physical condition indicate that there's possibly some other explanation besides Jacob and M.W. And in fact what we know is the state in closing argument took advantage of this rape shield ruling and made this argument. Quote, so to believe this defendant you have to disbelieve the medical evidence. You have to think that M.W. shoved something inside her and caused these injuries and this heel trauma or something else caused it, which there was no evidence whatsoever. This was a theme in the state's closing argument. They returned to the only medical evidence that you've been provided is this contact between Jacob and M.W. And in fact Dr. Swofford's report and M.W.'s admissions in that report provided clear another explanation for the physical condition of M.W.'s body. Now trial counsel tried to get this in, was prevented from doing that, and in fact the court erred again in not striking the state's question in Dr. Swofford's answer if there was a violation of the pretrial rape shield ruling. Now in the appeal the state first claims that the record contains no evidence as to M.W. emitting sexual intercourse and believes that we're relying upon the juvenile case file that was the subject of this court's prior appeal. We're not relying on that juvenile case file to explain the right to present evidence argument and Dr. Swofford's report. What we're relying on is what was relied upon in trial. Dr. Swofford's report, which is in the record, common law record 610, 612, shows there is another possible explanation that the jury was prevented from hearing about because of the trial court's incorrect ruling during the trial. The state's alternative argument is that even if the report contains an admission by M.W. that it is not relevant or provable. People v. Anthony Roy W., of course, shows us why such evidence would be highly relevant and provative in this case. Prior history is admissible where the history explains some physical evidence such as pregnancy, semen, or physical indications of intercourse. The rape shield statute cannot be made to turn on its head and made to be a sword to thwart the defendant's right to present a defense and confront the witnesses. I didn't see an offer of proof that was made or request to cross-examine or examine Dr. Swofford outside the presence of the jury in order to substantiate the claim. Trial counsel made a clear offer as to what the contents of Dr. Swofford's report was during that sidebar outside the presence of the jury. But no request to have an examination of Dr. Swofford outside the presence of the jury. Yes, trial counsel did not make a request at that point to question Dr. Swofford. However, trial counsel did make clear, everyone was clear as to what we're talking about is this one other boy, no condom, which was the same contact that was alleged between Jacob and M.W. That is enough to preserve the issue here. This was asked to be supplemented to the record on appeal. Previously, this court granted that motion. It is part of the record. This court can consider that as part of what was presented. The trial court not only erred in its ruling on non-allowing questioning, it also erred when it didn't strike the state's questioning and Dr. Swofford's answer. That's the proper course of what should happen when a party violates a pretrial rape shield ruling. The state here has not provided any argument as to why the trial court didn't err in doing that. This right to present a defense error was compounded by the prosecutor, as I mentioned earlier, relying upon this taking advantage of the trial court's ruling, knowing that there's this possible explanation or alternative explanation for the physical condition of M.W.'s body, other than what had been presented. The state provides no harmless error analysis for this preserved constitutional error under the Cregan exception to forfeiture. The right to present a defense error was further exacerbated by multiple instances of prosecutorial misconduct during closing argument. Now, putting aside its effect on that right to present a defense error, prosecutorial misconduct here warrants a new trial under either prong of plain error. Several more flagrant violations came during rebuttal closing argument. Some of the first words out of S.A. Henshaw's mouth was to target a specific juror who had three daughters and place the other jurors in the shoes of M.W.'s father as state's witness. Quote, I want you to go back and think, if you can, Mr. Patterson has three daughters. How you would feel, any of you, if your 13-year-old daughter, who is now 14, is sitting there and had to tell each one of you, all of us, the whole world that she had sex with a 22-year-old man. And yeah, she probably enjoyed it. I'm sure she did. Unfortunately, this was not the only instance where Henshaw committed reversible error in rebuttal argument, stating, quote, all hell would break loose, end quote, upon our state's children if we didn't have laws like the one that Jacob was charged with violating. And finally, his last comment to the jury was, quote, if you find, ladies and gentlemen, that the defendant is not guilty in this case, it is my opinion that the seduction of M.W. will be complete. The state provides no justification for that parting comment. Of course, how could it? Because making the jury complicit in the crime, if they come back with a verdict of not guilty, is the height of impropriety. A.S.A. Walker aped some of her colleagues' misconduct by vouching for M.W. and S.F.'s credibility when she compared their credibility, to understand, to her credibility as a witness in another case. And as I mentioned earlier, the prosecutor's misconduct was not limited to closing argument. It involves some comments during Jacob's demonstration as to the bodily scarring of Jacob. If this Court has no further questions right now. We're fine. We ask this Court to reverse Jacob's conviction. Reverse the remand. You are under the third issue for an in-camera review. Okay. Thank you very much. Thank you. We'll have a few moments after the State's argument. Good afternoon, Your Honors. Counsel, may it please the Court. Kelly Stacy appearing on behalf of the State. On appeal, the defendant raised multiple issues. The first issue raised was a sufficiency of the evidence argument. On appeal, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trial of fact could have found the essential elements of the crime beyond reasonable doubt. People v. Kettingham, it's a 2004 Supreme Court case, Hogan-Jackson v. Virginia. Stacy. Yes, ma'am. I do have some concerns about what was just being discussed with regard to the pointing out a juror during closing argument by the State. The State's involving the jury in the case. How do you get around that? I think what the State was trying to do was place the arguments in context for the jury. And there was a lot of back and forth between the attorneys on that issue. But I believe that the State has cited cases where that does not amount to reversible error. I don't believe any of the comments, prosecutorial comments made, amount to reversible error. In this case, we also have the trial. On appeal, why do you think that's true? I think it's true because the trial court indicated to the parties, here's exactly what the trial court said at page 858, neither opening statements nor closing arguments or evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded. Right. That's the standard instruction. Correct. That is the standard instruction for any case that was made in this case. Therefore, the jury should disregard anything that is not based on the evidence presented. I believe that the comment by Mr. Henshaw was not an improper comment. I don't believe that it has met the threshold of what an improper comment would be that would be sufficient to deny a defendant a fair trial. In this case, what you have to look at is prejudice has to be shown on all of these arguments made by the defense, including the State allegedly attempting to define what reasonable doubt was. I think the record shows the State did not do that. But what you have was from the get-go two of the jurors were telling the State, well, I just don't think I can convict unless I'm 100 percent sure that this person is guilty. And so the State was concerned about its right to a fair trial, but the State is not required to prove a 100 percent standard. It's beyond a reasonable doubt. That also ties into the argument on attempting to define reasonable doubt. When you look at both of those, none of that occurred in this case. The jury was told, well, we can define that for you. But the only way this case goes anywhere is if reversible error actually did occur. I believe the defense has not met the burden of showing that reversible error did occur, and I don't believe the defense can prove that under any of their theories. What about the fact that the State, as he said, hid behind the Rape Shield statute, knowing that the evidence wasn't coming in, said to the jury, well, you haven't heard any evidence of this, you know, any other evidence, suggesting to the jury that this could have been the only explanation? Well, the Rape Shield Act, the interesting thing is, on demand with this case, there was a juvenile case where another person was named. The allegation in that case was that there was touching by a hand to M.W.'s vagina. Now, if there's someone else that the defense says M.W. had consensual sexual intercourse with, first of all, she's 13, that is well below the age of consent in Illinois, so there's no consensual sexual intercourse that occurred. Second of all, the only other person it could be is this alleged defendant in this juvenile case that this court sent the case back on demand for. The trial court looked through those records. The allegations don't match. Dr. Swofford's testimony was it required a blunt force trauma in order to determine that this damage was caused by, what this damage was caused by, which was blunt force trauma, not caused by a hand really touching a private area. That was the allegation in the other case. So there's no other possible defendant out there or other possible person who fits the bill for who could have done this because the jury in this case found the defendant was guilty of penile vaginal penetration. The jury did not find the defendant guilty of digital penetration, merely requiring blunt force trauma. So the jury was aware of what the allegations were in the case, and based on M.W. and the defendant's statements, and a lot of defendant's admissions to S.F. and to actually even to the police, that he did have sex with M.W. And if you're comparing what can cause that injury, again, hand touching is not going to cause that, but the injury caused by defendant, Mr. Austin, would cause that blunt force trauma. And that's what Dr. Swafford was trying to get around to was to say, look, part of my analysis as a doctor is I've got to take in information and put pieces together. So she took in the information about Mr. Austin and that M.W. said, well, they had sexual intercourse. So for Dr. Swafford, in looking at the physical evidence, it was consistent with penile vaginal penetration because of the blunt force trauma that was present in the hymen. Now, Dr. Swafford said she could not say who did that, but we don't have any other candidates here. The other alleged candidate touched a vagina. Saying that that can cause blunt force trauma, I just think we're at a point where defense is grasping at straws. And the jury found the defendant guilty. I believe that verdict deserves the respect of this court. Most of the claims made by defendant on the sufficiency of the evidence are under matters that are in the province of the jury, such as complaining about the credibility of M.W. It's the jury's business to evaluate credibility in every case. They evaluate that on witnesses. And it's almost sacrosanct that no one invades that province. Even this court does not retry the defendant, just looks at, well, what was the evidence that was presented and could a rational jury have found that? I believe that's what we have here. A rational jury could have found and did find this defendant guilty of aggravated criminal sexual abuse. Under no theory presented by the defense can show any prejudice occurred. He got those records admitted as a supplement on the other juvenile case. They're not the same allegations. They're not the same defendant. And that's why I think the state can, Your Honor, Justice Gates, quote-unquote hide behind the way it's shielded. That's what it's designed to do. It's designed to not allow the other side just to come in and vilify and impugn the integrity of a witness just because the defendant thinks someone else might cause this. We just have a lot of allegations on the part of the defense, but they don't meet the standard on review for having the case overturned. The state believes the evidence, the testimony supports the jury's verdict. It's all in the promise of the jury to make those decisions and to determine how inconsistencies should be resolved. So the jury made those determinations in favor of M.W. and against Mr. Austin, and the jury is not required to take whatever the defendant says and elevate that to a position of innocence. The jury is assigned to roll those evidentiary issues out and determine who they believe in the case, which witnesses they believe, and whether there's evidence to back that up. We also have S.F., who was the one that turned this in initially. M.W. did not want to get Mr. Austin in trouble. He was friends with the family. So I believe this case, we just have a lot of allegations. They have nothing to them. The defense got all the material they needed. So the state respectfully asks you to affirm your honors. Thank you. Thank you. Thank you. Do you have some comments? Just briefly, your honors, I have to correct the state here. We're not relying on the L.F. case. That was made clear before the court on page 649 of the record. The defense is not talking about the L.F. Who are you talking about? We don't know because in the report it only states one other boy, no condom. Who is that boy? Are we supposed to go witch hunting? It's close to Halloween. What we're supposed to do is figure out if there's another explanation for the physical condition of the victim's body, which you're allowed to. You don't do it before trial. You don't do it during trial, right? Before trial, they had objected to not being able to inquire into the sexual history. That ruling was made, this report was tendered, and then the state opened the door when they asked the question, two, is her body consistent with being a virgin? So I see no scintilla of evidence that would allow you to open that door because we know that there's a boy out there, and we know there's a juvenile case where a boy was talking about touching her vagina. What else do you have? I mean, you can't put the victim on trial. No, we're not putting the victim on trial. What we're doing is what's allowed under Illinois Supreme Court precedents to explain the physical condition. And again, I return to what she states in the report to Dr. Swafford is past consensual activity. The L.F. case was not consensual activity. She was assaulted by L.F. The report indicates past consensual intercourse with one other boy, one condom. The jury did not hear that other possible explanation. And in this closely balanced case, and I have to correct the state here again. Did you ever attempt to take a deposition of the victim or interview her? To interview M.W. pre-trial. There's no indication of that in the record. I don't know what would allow to investigate this other boy. We have right here that Dr. Swafford's report indicates. No, but now you're going to do it during trial. You're going to put the victim on trial. Well, what we're going to do is ask whether there is another individual who could have caused the physical condition of her body, and that is allowed under case law. And that's what should have occurred. This is not putting her on trial for we're going to various multiple partners. But under the rules of evidence, as I understand them, if you ask a question like that and you don't know the answer, then you've committed error. Because this is not a truth-seeking process. This is an examination, right, to show probability that someone else caused the torn hymen. And we do know that. My question is, do you know that? Do you know who that boy is, who that reference is, when you ask the question? We don't have to know who it is. We just have to know that there was another individual by her own admission. This is her comments to Dr. Swafford when she's giving medical examination. Again, I have to return to it as before my time is up. Let me ask you another question. Usually when we see prejudice, we see someone who's been convicted of all the charges. And it seems to me that your allegations about the jury are contraindicated by the fact they actually found your client not guilty of one of these offenses. Well, for error, under the plain error doctrine, we actually don't have to show prejudice. We have to show that it's closely balanced. People be setting just— That's my point, though. Is it really closely balanced if the jury seems to have done their job and found them not guilty of one? They found him not guilty of the one count that didn't match up with their testimony. They found him guilty where they were given only one possible explanation for the physical evidence, that it was intercourse between Jacob and M.W. There was out there another explanation for the physical evidence. We know that they were split. They were not a unanimous jury after five hours. They were told to continue to deliberate and spend another five hours and reach that split decision. Again, this is a credibility contest between Jacob and M.W. People Be Nailer makes that clear. When it's a credibility contest, when you have error, which we know we have here in prosecutorial misconduct, and the right to present a defense, it is reversible error under the closely balanced prong. We don't have to establish a third prong of prejudice. Sebi rejected that argument just last year. But first you have to find error. Yes. And you've assumed prosecutorial, or that we have found prosecutorial. If this court does find error, this should be a new trial under either the right to present a defense or the prosecutorial misconduct issues. This court has no further questions. We ask for the relief request and debrief. Thank you, Your Honors. All right. Thank you. Thank you for your arguments, counsel. The matter will be taken under advisement, and the order will be issued through force. Thank you both.